NOTICE
Decision filed 07/22/24. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2024 IL App (5th) 230382-U

NO. 5-23-0382

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| STEFNEE D. WILSON, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Madison County. |
| | ) | |
| v. | ) | No. 19-CH-666 |
| | ) | |
| BRENDAN F. KELLY, JEFFREY YENCHKO, THOMAS HAINE, and MIKE FRERICHS, | ) ) ) | |
| | ) | |
| Defendants | ) | Honorable |
| | ) | Ronald S. Motil, |
| (Brendan F. Kelly, Defendant-Appellee). | ) | Judge, presiding. |

JUSTICE MOORE delivered the judgment of the court.
Justices Welch and Boie concurred in the judgment.

**ORDER**

¶ 1   *Held*: The circuit court's granting of summary judgment in favor of the defendants was not error where the plaintiff failed to present or support certain arguments in her opening brief, expressly abandoned certain arguments in her reply brief, and where ultimately, the complained of provision banning the sale of firearms manufactured using certain materials did not violate the second amendment or fourteenth amendment to the United States Constitution because it merely regulated the sale of firearms and historical precedent existed to support such restrictions.

¶ 2   The plaintiff, Stefnee D. Wilson, appeals the May 25, 2023, written order and October 3, 2022, written order, as well as the oral pronouncement issued on September 27, 2022, and "such other, further and different orders as is necessary for the full and complete review of those orders," of the circuit court of Madison County that granted the summary judgment motions in favor of the

1

defendants. For the following reasons, we affirm the October 3, 2022, order and all related orders which plaintiff has appealed.

¶ 3                                    I. BACKGROUND

¶ 4    This appeal stems from the circuit court's orders that, *inter alia*, granted summary judgment in favor of Brendan F. Kelly, Director of the Illinois State Police (Kelly), on the plaintiff's claims brought pursuant to 42 U.S.C. § 1983 that alleged section 24-3(A)(h) of the Criminal Code of 2012 (Code) (720 ILCS 5/24-3(A)(h) (West 2022)) violated the plaintiff's rights under the second and fourteenth amendments to the United States Constitution. The action originally included numerous defendants; however, all of the defendants except for Kelly were dismissed prior to the final orders currently at issue. The circuit court dismissed the other defendants as unnecessary parties, and the plaintiff does not challenge their dismissal in this appeal. The action also included other claims; however, none of those have been appealed.

¶ 5    The relevant provision the plaintiff complains of in her complaint is section 24-3 of the Code, which provides, in relevant part:

"(A) A person commits the offense of unlawful sale or delivery of firearms when he or she knowingly does any of the following:

* * *

(h) While holding any license as a dealer, importer, manufacturer or pawnbroker under the federal Gun Control Act of 1968, manufactures, sells or delivers to any unlicensed person a handgun having a barrel, slide, frame or receiver which is a die casting of zinc alloy or any other nonhomogeneous metal which will melt or deform at a temperature of less than 800 degrees Fahrenheit." 720 ILCS 5/24-3(A)(h) (West 2022).

¶ 6    In her complaint, Wilson alleges that she "does not presently own any firearms" because she "cannot afford most handguns on the market." She claims that the handguns which are within her budget of approximately $100 "are generally made of a zinc alloy." In count III, she contends that the statute prevents her from purchasing an affordable "handgun of her choice." In count IV, she asserts that the statute "discriminates against out of state handguns in favor of Illinois made handguns."

¶ 7    The trial court ultimately dismissed both counts on summary judgment. The trial court first found that the statute does not prohibit the plaintiff from possessing a firearm of her choice. Instead, the trial court found that the provision only prevents her from purchasing one from a licensed firearms dealer and prevents a licensed firearm dealer from selling one. Thus, the trial court determined that the challenged statute merely regulates the commercial sale of arms, rather than possession of handguns, and therefore, the statute falls outside of the plain text of, and therefore is not protected by, either the second amendment of the United States Constitution, or the Illinois Constitution. Additionally, the trial court found other cases and historical analogues where statutes regulated the kinds of weapons that persons could carry, and in those matters the trial courts had upheld the statutes as constitutional. However, the trial court failed to cite explicitly to the historically analogous statutes. Ultimately, the trial court, finding no constitutional protection for these firearms, dismissed counts III and IV of the complaint.

¶ 8    This timely appeal followed, and we include additional facts below in our analysis where relevant.

¶ 9                                    II. ANALYSIS

¶ 10    As an initial matter, the plaintiff has failed to articulate any argument as to the claims alleged against the other defendants which are no longer a party to this suit, Yenchko and Frerichs,

3

nor does she make any arguments relating to the claims about license application fees. Additionally, she expressly abandons any claims alleged under count IV of her complaint. Thus, the only issue properly before us is count III regarding the constitutionality of section 24-3(A)(h) against Kelly. Due to her failure to articulate any argument as to the other issues, including the granting of summary judgment on her fees claims which were alleged in counts I and II, she has forfeited any review of those claims. See *Kim v. St. Elizabeth's Hospital of the Hospital Sisters of the Third Order of St. Francis*, 395 Ill. App. 3d 1086, 1092 (2009); Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) ("Points not argued are forfeited and shall not be raised in the reply brief, in oral argument, or on petition for rehearing."). Also, in her brief, the plaintiff expressly waives any objection to dismissal of the other defendants; thus, she has waived review of any of those issues. See, *e.g.*, *People v. Whitfield*, 217 Ill. 2d 177, 184 (2005).

¶ 11 Turning now to the issue before us, we first examine our standard of review. Summary judgment is proper where "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2022); see *Sun-Times v. Cook County Health & Hospitals System*, 2022 IL 127519, ¶ 24. This court "review[s] *de novo* a constitutional challenge to a statute because it presents a question of law." *People v. Masterson*, 2011 IL 110072, ¶ 23.

¶ 12 In *District of Columbia v. Heller*, 554 U.S. 570, 598 (2008), the United States Supreme Court found that the second amendment of the United States Constitution conferred an individual right to keep and bear arms.

> "Some have made the argument, bordering on the frivolous, that only those arms in existence in the 18th century are protected by the Second Amendment. We do not interpret constitutional rights that way. Just as the First Amendment protects modern forms

4

of communications, *e.g.*, *Reno v. American Civil Liberties Union*, 521 U.S. 844, 849 (1997), and the Fourth Amendment applies to modern forms of search, *e.g.*, *Kyllo v. United States*, 533 U.S. 27, 35-36 (2001), the Second Amendment extends, *prima facie*, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding." *Id.* at 582.

¶ 13    "Like most rights, the right secured by the Second Amendment is not unlimited." *Id.* at 626. "From Blackstone through the 19th-century cases, commentators and courts routinely explained that the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Id.* Our United States Supreme Court especially noted in *Heller* that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, *or laws imposing conditions and qualifications on the commercial sale of arms*." (Emphasis added.) *Id.* at 626-27.

¶ 14    In count III, the plaintiff argues that section 24-3(A)(h) of the Code (720 ILCS 5/24-3(A)(h) (West 2022)) violated her right to bear arms under the second and fourteenth amendments to the United States Constitution (U.S. Const., amends. II, XIV). Specifically, plaintiff contends that the record demonstrates that handguns of this type are legal under federal law, and the law of most states. She argues that but for this statute, at least one licensed firearm dealer would sell these types of firearms in Illinois. She further contends that these firearms are of good quality, are safe to fire, and do not deform or explode when fired; that these firearms are in common use in the United States, for lawful purposes; and that about half of the .22 revolvers made and sold in the United States in a given year are the Heritage .22 revolver, which is her handgun of choice. The claim by the plaintiff is that what truly distinguishes these types of firearms from others is that

they tend to cost less than firearms made with more traditional materials. Among those handguns banned under the statute at issue, are the Heritage brand, Rough Rider .22 revolver. Other banned firearms include certain handguns made by such premium manufacturers as Colt, Smith and Wesson, and Walther. Thus, the grand contention is that the statute is meant only to prevent individuals with less financial resources from procuring handguns.

¶ 15 Our supreme court in *Wilson v. County of Cook* addressed our approach in reviewing second amendment constitutional challenges:

"These courts have generally followed a two-pronged approach. The threshold question we must consider is whether the challenged law imposes a burden on conduct falling within the scope of the second amendment guarantee. That inquiry involves a textual and historical inquiry to determine whether the conduct was understood to be within the scope of the right at the time of ratification. [Citations.] If the government can establish that the challenged law regulates activity falling outside the scope of the second amendment right, then the regulated activity is categorically unprotected. [Citation.]

However, 'if the historical evidence is inconclusive or suggests that the regulated activity is not categorically unprotected—then there must be a second inquiry into the strength of the government's justification for restricting or regulating the exercise of Second Amendment rights.' [Citation.] What form that takes has been articulated in various ways, but courts generally recognize that *Heller* rejected rational-basis review and requires some form of heightened scrutiny. [Citations.]" *Wilson v. County of Cook*, 2012 IL 112026, ¶¶ 41-42.

¶ 16 First, we recognize that the plaintiff has a fundamental constitutional right to keep and bear arms and that this right extends to handguns. See *Heller*, 554 U.S. 570. Second, we note that the

plaintiff has failed to articulate explicitly whether she is making a facial challenge or as-applied challenge to the statute's constitutionality. Based upon the complaint's allegations and the arguments made, it appears that ultimately the plaintiff is making an as-applied challenge because the complaint puts forth alleged violations which depend upon her individual circumstances. See *Napleton v. Village of Hinsdale*, 229 Ill. 2d 296, 318 (2008) (as-applied claim "challenges a legislative enactment as applied to the specific facts of a plaintiff's case"). Here, the allegations are that the only handguns within her limited budget "are generally made of zinc alloy," and that the ban on selling such guns prevents her from buying an affordable "handgun of her choice."

¶ 17 However, as to her as-applied challenge, we find that the plaintiff on appeal has failed to put forth any direct argument on this issue, and thus, has forfeited review under such a claim. In her brief, Wilson does not mention any facts concerning her financial ability to purchase a handgun. Nor does she develop any argument that summary judgment was improper given her "specific facts and circumstances," as would be required. See *Awkerman v. Illinois State Police*, 2023 IL App (2d) 220434, ¶¶ 37-38. Thus, Wilson has forfeited any argument that section 24-3(A)(h) is unconstitutional as applied to her. See *Maun v. Department of Professional Regulation*, 299 Ill. App. 3d 388, 399 (4th Dist. 1998) (argument regarding as-applied challenge forfeited where omitted from opening brief on appeal and raised in reply brief); Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) ("Points not argued are forfeited and shall not be raised in the reply brief, in oral argument, or on petition for rehearing.").

¶ 18 Even if we did not find it forfeited, we would still find that the circuit court did not err. The plaintiff put forth an affidavit of Scott Pulaski, a licensed gun dealer in Illinois, who testified only that he would sell the alloy guns if it were not illegal to do so, that they are guns that are commonly owned and used in other parts of the United States, and that he believes the guns to be generally

7

safe and good quality. Mr. Pulaski did not offer any testimony regarding pricing of alloy guns versus steel guns or aver that the plaintiff could not afford a steel gun. However, the State presented an expert, Bill Oglesby, also a licensed gun dealer in Illinois, who testified that a legal gun, not made of alloy, could be purchased for nearly the same price as that sought by the plaintiff. He named two specific models which were listed within $20 of the plaintiff's preferred firearm. He also testified that steel guns were much more durable and generally of better quality. The plaintiff failed to put forward any evidence which contradicted this claim.

¶ 19    Therefore, where legal firearms exist which do fall within the alleged budget of the plaintiff, there can be no legitimate infringement upon her right under an as-applied challenge. The right to get the "gun of your choice" is not protected by the second amendment.

¶ 20    Assuming that the plaintiff was putting forth a facial challenge to the statute's constitutionality, we also find that her claim would fail. This is because "there is no set of circumstances under which the statute would be valid." *People v. Bochenek*, 2021 IL 125889, ¶ 10 (facial challenge poses "particularly heavy burden"); see *Burns v. Municipal Officers Electoral Board of the Village of Elk Grove Village*, 2020 IL 125714, ¶ 13 ("facial challenge to a statute is the most difficult challenge").

¶ 21    As previously stated, at the first step, the plaintiff must show that "the Second Amendment's plain text covers [the regulated] conduct" and thus "presumptively protects that conduct." *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 17 (2022); see also *id.* at 44 n.11. If the plaintiff satisfies that burden, then at the second step, "the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Id.* at 17.

¶ 22 Then, in order to succeed, the plaintiff must show that the second amendment protects the sale of zinc alloy and similar handguns that are prohibited for sale under section 24-3(A)(h). Importantly, the statute does not prohibit the possession or use of such handguns, and the United States Supreme Court has repeatedly stated, "laws imposing conditions and qualifications on the commercial sale of arms" are "presumptively lawful." *Heller*, 554 U.S. at 626-27 & n.26.

¶ 23 We do recognize that in *Heller*, the Supreme Court did find that the second amendment does protect against unusually "severe" restrictions that would result in a "total[ ] ban[ ] [on] handgun possession." *Id.* at 628-29. This is the argument that the plaintiff is seemingly putting forward. That the banning of zinc alloy guns acts as a "ban on a whole class of guns." We disagree. This is not a blanket ban on the possession or sale of a true class or type of gun, such as a handgun, long gun, machine gun, etc. This is the banning of only the sale of a gun manufactured in a certain way using certain materials. Handguns are still readily available for purchase in Illinois and, as evidenced above through Bill Ogelsby's unrefuted affidavit, steel guns of equal or better quality are for sale at similar price points. Additionally, we note that this particular statute has been in effect in Illinois since August 1973, nearly 51 years. Thus, if it was truly the total ban on a class of firearms that the plaintiff claims it to be, it would be evident today. Thus, analyzing the issue under the first step, a factfinder could not reasonably find that the ban on zinc alloy handguns "meaningfully constrain[s]" an individual's ability to "acquir[e] firearms." *Gazzola v. Hochul*, 88 F.4th 186, 197 (2d Cir. 2023) (upholding denial of preliminary injunction on second amendment claim challenging regulations on firearms sellers).

¶ 24 Secondly, even if the plain text did cover the statute, we would find that the prohibition of the selling of firearms based upon the material they are constructed out of is analogous to a robust historical tradition of regulating the types of weapons that citizens may possess or sell based on

9

the weapons' physical characteristics. See *Bruen*, 597 U.S. at 17. The ban on selling zinc alloy and similar handguns that melt at a certain temperature is analogous to this tradition because the statute aims to regulate the firearm based upon its physical attributes, *i.e.*, type of metal from which the gun is manufactured. This is similar to the limitations commonly imposed today regarding the caliber of handguns, the length of barrels, the size of the gun, the firing mechanisms, and a multitude of others. Thus, we would find that, like in previous cases limiting the sale of weapons based upon physical characteristics, section 24-3(A)(h) does not amount to a total prohibition on the sale of handguns in Illinois.

¶ 25                              III. CONCLUSION

¶ 26    For the foregoing reasons, we affirm the October 3, 2022, order and all related orders.


¶ 27    Affirmed.