2023 IL App (2d) 220434
No. 2-22-0434
Opinion filed November 28, 2023

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| DANIEL AWKERMAN, | ) | Appeal from the Circuit Court |
| | ) | of Lake County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 22-MR-122 |
| | ) | |
| THE ILLINOIS STATE POLICE and THE | ) | |
| LAKE COUNTY STATE'S ATTORNEY, | ) | Honorable |
| | ) | Daniel L. Jasica, |
| Defendants-Appellees. | ) | Judge, Presiding. |

_____

JUSTICE JORGENSEN delivered the judgment of the court, with opinion.
Justices Birkett and Mullen concurred in the judgment and opinion.

**OPINION**

¶ 1       Plaintiff, Daniel Awkerman, petitioned the circuit court of Lake County for relief after

defendant the Illinois State Police (ISP) denied plaintiff's application for reinstatement of his

firearm owner's identification (FOID) card under the Firearm Owners Identification Card Act

(Act) (430 ILCS 65/0.01 *et seq.* (West 2022)), on the basis of his conviction of conspiracy to

commit cannabis trafficking (720 ILCS 5/8-2 (West 2012); 720 ILCS 550/5.1(a) (West 2012)), a

Class 1 felony. 430 ILCS 65/8(c) (West 2022). The circuit court denied plaintiff relief, finding that

he had failed to show either that he was not likely to endanger the public safety or that issuing him

a FOID card would not be contrary to the public interest. *Id.* § 10(c)(2), (3). Plaintiff appeals,

arguing that (1) sections 8(c) and 10(c) of the Act are unconstitutional as applied to him and,

therefore, the ISP's failure to grant relief violated his rights under the second and fourteenth amendments to the United States Constitution (U.S. Const., amends. II, XIV) and, (2) alternatively, the circuit court abused its discretion in denying him relief under the Act. We affirm.

¶ 2                                I. BACKGROUND

¶ 3                        A. FOID Card Applications

¶ 4     In 2007 or 2008, plaintiff obtained a FOID card. In 2010, plaintiff applied to renew his FOID card. In the application, he answered "No" to the question of whether he had been convicted of a felony. The ISP, on February 18, 2010, denied his request, informing him that it had discovered that he had been arrested in Oklahoma County, Oklahoma, in 2006, for "Acquire Proceeds from Drug Activity." The ISP further informed plaintiff that, in order for the ISP to further consider his eligibility for a FOID card, plaintiff would need to submit certified court records documenting the disposition of the Oklahoma charge and, if applicable, a certified statement that he was not convicted of that offense. Plaintiff sent to the ISP an unsigned consent judgment in the Oklahoma case (No. CJ-2006-1253) and did not submit a certified statement that his 2006 Oklahoma arrest did not result in a conviction.

¶ 5     The ISP also noted that its check had revealed an October 2007 arrest by the Elmwood Park Police Department for aggravated assault, a Class A misdemeanor. The case disposition entry stated "Stricken off with leave to reinstate."

¶ 6     Further, the ISP's background check revealed that plaintiff had charges pending against him in Du Page County (case No. 2010-CF-1171). Specifically, in May 2010, he had been arrested and charged with (1) cannabis trafficking, a Class X felony, (2) attempted cannabis trafficking, a Class X felony, and (3) possession of a firearm without a valid FOID card, a Class A misdemeanor. On January 19, 2012, plaintiff pleaded guilty to, and was convicted of, conspiracy to commit

cannabis trafficking (more than 5000 grams) (720 ILCS 5/8-2 (West 2012); 720 ILCS 550/5.1(a) (West 2012)) and his FOID card was revoked. He was sentenced to 18 days in jail with credit for time served and was placed on 48 months' felony probation. Plaintiff was also ordered to pay $12,340 in fines and costs. He successfully completed probation and was discharged, by order, on January 15, 2016.

¶ 7    On November 4, 2021, plaintiff reapplied again for a FOID card, which is the application at issue in this appeal. He answered "Yes" to the question of whether he had been convicted of a felony. On December 7, 2021, the ISP denied his request based on his prior felony conviction.

¶ 8                                B. Circuit Court Proceedings

¶ 9    On February 24, 2022, plaintiff petitioned for judicial review, seeking reversal of the ISP's denial of his application and an order directing it to issue him a FOID card. He argued first that the ISP's denial adversely affected his second and fourteenth amendment rights by prohibiting him from lawful firearm ownership. Plaintiff also asserted that he is well respected in the community, that his criminal history and reputation are such that he will likely not act in any manner dangerous to the public safety, and that granting him relief would not be contrary to the public interest or federal law.

¶ 10    Defendant the Lake County State's Attorney objected to plaintiff's petition, arguing that honesty is an indicator of reformation and that plaintiff's criminal history, specifically, his Oklahoma felony drug arrest in 2006 (for which no disposition was available) was not mentioned in his application and that this triggered public interest and safety concerns. Further, such concerns were also triggered because plaintiff committed a serious felony in this state within a few years of the Oklahoma arrest.

¶ 11    In its objection to plaintiff's complaint, the ISP argued that its denial of plaintiff's FOID card application was a proper exercise of its authority and discretion. See 430 ILCS 65/10(c)(1)-(4) (West 2022). The ISP noted that plaintiff sent it a consent judgment in the Oklahoma case that was not signed, dated, or certified. He also did not submit to the ISP a certified statement that no conviction resulted from the arrest. The ISP noted that a background check revealed that plaintiff had charges pending against him in Du Page County, including a charge for possessing a firearm without a valid FOID card, and he had a 2007 arrest in Elmwood Park for aggravated assault, a Class A misdemeanor. The ISP argued that plaintiff could not be trusted to act responsibly if issued a firearm, he has a violent character as demonstrated by his arrest for aggravated assault, and he is likely to pose a threat to public safety. Granting him relief, the ISP further asserted, would be contrary to the public interest, due to plaintiff's criminal history. Finally, the ISP argued that granting plaintiff relief would be contrary to federal law, which prohibits a person with a felony conviction (*i.e.*, a crime punishable by imprisonment for a term exceeding one year) from purchasing or receiving firearms. 18 U.S.C. §§ 921(a)(2), 922(g)(1) (2018).

¶ 12                                     1. Hearing

¶ 13    An evidentiary hearing occurred on November 16, 2022. The ISP's business records were admitted into evidence, as was a transcript from the Du Page County proceeding, the latter of which is not contained in the record on appeal.

¶ 14    Stephanie Awkerman, plaintiff's wife, works as a nuclear medicine technologist. She met plaintiff 21 years ago, and they have been married for 6 years. They have two children, ages 8 and 10; they live together; and the plaintiff is present in the children's lives and helps to raise them. If plaintiff were allowed to own a firearm again, Stephanie would not fear for her own, her children's, or community members' lives. She has never known plaintiff to get into fist fights or experience

road rage. Stephanie testified that plaintiff does not have a history of substance abuse issues or problems with illegal narcotics or drugs. In the time she has known plaintiff, he has been consistently employed. He is currently self-employed and has never been terminated from a job.

¶ 15    Stephanie is aware of plaintiff's 2010 arrest in Du Page County, but she is not aware of the circumstances of the arrest or conviction and did not ask about it. "I didn't want to get involved." She further stated:

> "I knew the basics about what was going on, but if there was a case going on with it and there were many people involved and for my safety and for my own protection I didn't ask, he didn't tell, that way, you know, in case he wanted to be a witness for something or, you know, anything happened, he didn't want me to have anybody come after me for anything."

¶ 16    Until he was arrested in 2010, Stephanie was unaware that plaintiff was involved in the cannabis business. He had always been self-employed as a painter and construction worker. She did not know that plaintiff revealed to investigators that he allowed a home they rented in Elmwood Park to be used by someone for cannabis trafficking. Stephanie knew that plaintiff and another person owned a convenience store in Franklin Park.

¶ 17

¶ 18    Stephanie is aware of plaintiff's 2006 arrest in Oklahoma and the charge of acquiring drug proceeds. He did not say anything about it. Stephanie knew that plaintiff was on a road trip, but he did not tell her where he was going or what he was doing. Stephanie knew that plaintiff was arrested for aggravated assault. She testified that the case was "dropped" because it was a "misunderstanding," when her brother's friend called the police while he was helping Stephanie move out. Stephanie denied that plaintiff has ever been violent toward her or the children.

¶ 19     After his 2010 arrest, plaintiff's FOID card was revoked. If he were granted a card again, he would probably want a firearm because his father works at a gun store that has a shooting range and they would shoot as a hobby. Stephanie had a FOID card that expired in May 2022. She has no felony convictions and has had one arrest for driving under the influence (DUI) (in June 2022).

¶ 20     Kevin Kacprzak, plaintiff's friend since the 1990s, has no felony convictions but has been arrested for DUI (in 2011) and was convicted, in Cook County, of reckless driving (in 2012). He testified that he has not observed plaintiff engaging in any fistfights, yelling at anyone in a threatening manner, or consuming illegal drugs. He and plaintiff go through periods, including years, where they do not see or speak with each over. Kacprzak is aware of plaintiff's 2010 arrest for cannabis trafficking. Plaintiff was "hurting for money" and "trying to provide for his family." Kacprzak, who has a valid FOID card, believes that plaintiff can satisfy the responsibilities of firearm ownership because he has "grown up a lot" and has a wife and children. If plaintiff's firearm's rights were restored, Kacprzak would not fear for any members of the community or himself.

¶ 21     Plaintiff, age 48, testified that he is a self-employed general contractor for Complete Home Care Solutions. His company works on commercial and residential construction jobs. Plaintiff has lived in Lake Villa for 12 years with Stephanie and their two children.

¶ 22     Plaintiff wants to own a firearm for self-defense because there are a lot of burglaries and car thefts in his neighborhood. If the court restores his firearm rights, he plans to apply for a concealed carry license. Plaintiff's father works at Red Dot Firearms in Lake Villa and is a range safety officer there. Plaintiff will store his firearms in his home in a safe with a lock. In his car, he will store them in a gun case.

¶ 23 Plaintiff initially obtained a FOID card in 2007 or 2008 and became aware that it was revoked sometime after his 2010 arrest. Currently, plaintiff's father has his firearms.

¶ 24 Plaintiff further testified that he has no misdemeanor convictions and only one felony conviction—the 2012 cannabis trafficking conviction in Du Page County. He was sentenced to four years' probation, which he successfully completed in 2016. Plaintiff never failed a drug test while he was on probation.

¶ 25 Plaintiff testified that he was not convicted of any criminal offense in Oklahoma. According to plaintiff, in 2007 or 2008, he was with his father when his father took out money from a bank in Illinois one morning because his father wanted to purchase real estate in Arkansas. They were videotaped by the bank surveillance camera. Plaintiff was driving to Texas to visit family and intended to look at property in Arkansas on the way back to Illinois. On the way to Texas, Oklahoma police pulled him over and searched his vehicle. A K-9 alerted to money in the vehicle ($20,000), plaintiff was arrested, and the money was seized. "That's why they labeled it as drug proceeds." He continued, "90 percent of the circulated money in a big city has drug residue on it." Ultimately, $15,000 was returned to plaintiff. According to plaintiff, pursuant to a "settlement" (*i.e.*, forfeiture proceeding), he gave the authorities $5000, and they dropped the case.

¶ 26 Addressing the 2007 aggravated assault arrest in Elmwood Park, plaintiff testified that he was not convicted of that offense. Plaintiff explained that he and Stephanie, his then-girlfriend, were having a falling out and that she was moving out. While she packed, they argued about custody of their dog. Someone who worked for plaintiff was at the house, and he knew that plaintiff had guns in the house. The individual did not feel safe, according to plaintiff, and called the police. Plaintiff received a call from Stephanie's cell phone, wherein a police lieutenant asked him to

come outside. He also asked if plaintiff had any guns in the house, and plaintiff replied that he did. When plaintiff went outside, he was arrested. The case was dismissed after the first court date.

¶ 27    In 2010, police came to plaintiff's house in Addison and arrested him. Plaintiff pleaded guilty to cannabis trafficking, a Class 1 felony, in Du Page County and, as part of his plea, was required to cooperate with federal officials. He explained that, at the time, he ran a convenience store but was experiencing financial difficulties. His partner in the store also ran a gas station for an uncle and sent plaintiff (and the uncle) on four trips to California in a semi-truck. The uncle picked up cannabis, and they returned to Illinois with money for the uncle. They transported about 150 to 200 pounds of cannabis from California to Illinois on each trip. About 10 pounds were stored at plaintiff's convenience store. When he was arrested in 2010, plaintiff had two handguns and two shotguns. They were seized when he was arrested and ultimately were turned over to his father.

¶ 28    Plaintiff testified that his life has changed. He moved away from the people with whom he used to interact. He also now makes more money working in construction and has children. Plaintiff does not want to endanger them or Stephanie, and he has no desire to engage again in any type of illegal activity.

¶ 29                    2. Circuit Court's Ruling

¶ 30    The circuit court, in November 2022,[1] denied plaintiff relief on the basis that plaintiff had not established the second and third factors under section 10(c) of the Act. See 430 ILCS 65/10(c)(2), (3) (West 2022). The court referenced plaintiff's 2010 interstate transport of large

---

[1]The court announced its decision on November 18, 2022, and a written order was filed on November 23, 2022.

quantities of cannabis and United States currency and his storage of large quantities of cannabis at his convenience store. The court noted that plaintiff was 36 years old at that time and, thus, his criminal activity was not "a youthful indiscretion." The court also noted that only six years had passed since the termination of plaintiff's probation, "so the Court does not have the benefit of a great number of years of responsible and unsupervised behavior by" plaintiff to be assured that plaintiff has "left his criminality behind." Next, the court noted that, at the same time as the interstate drug transport and the use of his place of business to store drugs, plaintiff applied for the renewal of his FOID card. He had previously held a FOID card, but it had expired. Also, in 2010, plaintiff was charged with, among other things, a gun offense (*i.e.*, possession of a firearm without a valid FOID card, a Class A misdemeanor), and he ultimately pleaded guilty to a Class 1 conspiracy count. Thus, the court noted, plaintiff illegally possessed a firearm at the time of his criminal activity, and, in the court's view, this did not reflect responsible gun ownership.

¶ 31 The court also noted the 2006 Oklahoma forfeiture, finding that plaintiff offered no explanation for why he was stopped in Oklahoma, why a K-9 unit was called to the scene, or why or how he was going to buy land on his father's behalf with cash. It further found that plaintiff did not explain why he agreed to the forfeiture of $5000 if, as he testified, he had video evidence that demonstrated he and his father had withdrawn the cash from his father's bank. The court noted that the Oklahoma arrest presented a fact pattern similar to the 2010 drug trafficking, where plaintiff was traveling between Illinois and California with a large amount of cash. In sum, the court found plaintiff incredible concerning the Oklahoma arrest. It also noted that the arrest thus undercut his testimony that he only briefly, in 2010, was engaged in illegal drug trafficking.

¶ 32 Addressing Stephanie's testimony, the court noted that her alleged lack of knowledge of plaintiff's activities and her testimony that she did not inquire about them due to safety concerns

was "troubling" because it undercut her testimony regarding plaintiff's current character. The court also noted that both she and Kacprzak offered no testimony concerning plaintiff's reputation in the community. As to Kacprzak, the court did not place much weight on his testimony because he testified that he knew nothing about plaintiff's criminal conduct and that they sometimes go extended periods without contact.

¶ 33    As to section 10(c)(2) of the Act (allowing a court to grant relief if the applicant shows, *inter alia*, that the circumstances regarding a criminal conviction, criminal history, and reputation are such that he or she will not be likely to act in a manner dangerous to public safety), the court found that this requirement had not been satisfied. It referenced plaintiff's conspiracy conviction, his remaining criminal history, and his reputation. The conviction, the court noted, was for a very serious felony based on what were originally charged as multiple Class X felonies that plaintiff admitted he committed. He was in his mid-thirties, the conviction is only 10 years old, and he has been off probation only since 2016. The court also determined that the 2006 Oklahoma arrest suggested that plaintiff's criminal history was not limited to 2010.

¶ 34    As to section 10(c)(3) of the Act (allowing a court to grant relief if the applicant shows, inter alia, that doing so would not be contrary to the public interest), the court found that, for the same reasons, the element had not been met. "Criminal conduct was very similar and relatively recent. During that same period, he illegally possessed firearms." The court also noted that there was no reputation testimony and that Stephanie's and Kacprzak's testimony "[were] not necessarily opinions" and, in any event, they testified that they were unaware of prior instances of dangerous and serious criminal conduct by plaintiff prior to his arrest and conviction. Accordingly, the court determined, plaintiff had not demonstrated that granting relief would not be contrary to the public interest. Plaintiff appeals.

¶ 35                                    II. ANALYSIS

¶ 36                            A. As-Applied Challenge to Act

¶ 37    Plaintiff argues first that the denial of his FOID card application under sections 8(c) and 10(c) of the Act violated his rights under the second and fourteenth amendments to the United States Constitution. He maintains that his rights were violated despite his having no violent misdemeanor or felony convictions. Thus, plaintiff contends, sections 8(c) and 10(c) are unconstitutional as applied to him. For the following reasons, we reject his argument.

¶ 38    An as-applied challenge requires a showing that the statute violates the constitution as it applies to the facts and circumstances of the challenging party. *People v. Garvin*, 219 Ill. 2d 104, 117 (2006). In contrast, a facial challenge requires a showing that the statute is unconstitutional under any set of facts, *i.e.*, the specific facts related to the challenging party are irrelevant. *Id.* All as-applied constitutional challenges are, by definition, dependent on the specific facts and circumstances of the person raising the challenge. " 'Therefore, it is paramount that the record be sufficiently developed in terms of those facts and circumstances for purposes of appellate review.' " *People ex rel. Hartrich v. 2010 Harley-Davidson*, 2018 IL 121636, ¶ 31 (quoting *People v. Thompson*, 2015 IL 118151, ¶ 37). We review *de novo* an as-applied constitutional challenge because the constitutionality of a statute presents a question of law. *Id.* Further, although we generally give deference to the circuit court's factual and credibility determinations (*id.*), here, the facts relevant to this issue are undisputed and, therefore, our review remains *de novo*.

¶ 39    Here, the ISP denied plaintiff's application for reinstatement of his FOID card, pursuant to section 8(c) of the Act. Section 8(c) provides that the ISP may deny a FOID card application if it finds that the applicant is "[a] person convicted of a felony under the laws of this or any other

jurisdiction." 430 ILCS 65/8(c) (West 2022). The ISP noted plaintiff's conviction of conspiracy to commit cannabis trafficking, a Class 1 felony.

¶ 40 Plaintiff petitioned the circuit court, and section 10(c) of the Act permits the court to grant relief if the applicant establishes that

"(1) the applicant has not been convicted of a forcible felony under the laws of this State or any other jurisdiction within 20 years of the applicant's application for a [FOID] Card, or at least 20 years have passed since the end of any period of imprisonment imposed in relation to that conviction;

(2) the circumstances regarding a criminal conviction, where applicable, the applicant's criminal history and his reputation are such that the applicant will not be likely to act in a manner dangerous to public safety;

(3) granting relief would not be contrary to the public interest; and

(4) granting relief would not be contrary to federal law." *Id.* § 10(c).

Subsections (2) and (3) are at issue in this case.

¶ 41                                    1. Second Amendment Case Law

¶ 42 The second amendment to the United States Constitution provides: "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const., amend. II. In *District of Columbia v. Heller*, 554 U.S. 570, 592-95, 635 (2008), the United States Supreme Court struck down District of Columbia laws that banned the possession of operable handguns inside the home and held that the second amendment guarantees individuals the right to keep and bear arms in their home for self-defense. However, it also noted that it is well established that, "[l]ike most rights, the right secured by the Second Amendment is not unlimited." *Id.* at 626. It further stated that "prohibitions on the

possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms" are presumptively lawful. *Id.* at 626-27, 627 n.26. The Court, in *McDonald v. City of Chicago*, 561 U.S. 742, 780, 791 (2010) (plurality opinion), reaffirmed *Heller*'s holding "that the Second Amendment protects a personal right to keep and bear arms for lawful purposes, most notably for self-defense within the home" and held that "the Due Process Clause of the Fourteenth Amendment incorporates the Second Amendment right recognized in *Heller*." In *McDonald*, the Court also reiterated its statement in *Heller* that "longstanding *** prohibitions on the possession of firearms by felons and the mentally ill" are lawful. (Internal quotation marks omitted.) *Id.* at 786.

¶ 43    In *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. ___, ___, 142 S. Ct. 2111, 2127 (2022), the Court held that *Heller* and *McDonald* did not support applying means-end scrutiny—a test that had developed in the lower courts after *Heller*—such as intermediate or strict scrutiny, in second amendment cases.[2]  Instead, the Court set forth a two-step framework a court must apply in determining whether a firearm regulation violates the second amendment. First, a court must

---

[2]In *Bruen*, the Court analyzed a facial challenge to a New York firearm licensing scheme, which dated to 1911, concerning carrying a concealed firearm in public. Under that law, in order to obtain a permit to carry a concealed handgun in public, an applicant was required to demonstrate "proper cause," *i.e.*, "a special need for self-protection distinguishable from that of the general community." *Id.* at ___, 142 S. Ct. at 2123.  The Court concluded that, because New York could not point to a robust tradition of regulations similar to the "proper cause" requirement, the state's statute violated the second amendment. *Id.* at ___, 142 S. Ct. at 2156.

address the question of whether the second amendment's plain text covers the individual's conduct. *Id.* at ___, 142 S. Ct. at 2126-27. Second, if the court determines the conduct is covered, it must consider whether the government has affirmatively demonstrated that the regulation at issue is consistent with this country's historical tradition of firearm regulation. *Id.* This historical inquiry can take one of two forms: (1) a straightforward review of whether such regulations existed at the time of the nation's founding or (2) reasoning through analogy that a historical regulation is a proper analogue for a modern firearm regulation. *Id.* at ___, 142 S. Ct. at 2131. As to the latter, *Bruen* instructs that the analogue must be "relevantly similar" as judged by "at least two metrics: how and why the regulations burden a law-abiding citizen's right to armed self-defense." *Id.* at ___, 142 S. Ct. at 2132-33.

¶ 44     In *Bruen*, one justice indicated that *Heller*'s and *McDonald*'s pronouncements concerning restrictions on the possession of guns remain good law, and at least five of the justices, *i.e.*, a majority of the Court, explicitly clarified that the prohibitions on firearm possession by felons remain lawful. *Id.* at ___, 142 S. Ct. at 2157 (Alito, J., concurring) ("Our holding decides nothing about who may lawfully possess a firearm *** [n]or have we disturbed anything that we said in *Heller* or [*McDonald*] about restrictions that may be imposed on the possession or carrying of guns."); *Id.* at ___, 142 S. Ct. at 2162 (Kavanaugh, J., concurring, joined by Roberts, C.J.) (noting the second amendment allows gun regulations and further noting *Heller*'s statement (and *McDonald*'s reiteration) that prohibitions on the possession of firearms by felons and mentally ill persons are presumptively lawful); *Id.* at ___, 142 S. Ct. at 2189 (Breyer, J., dissenting, joined by Sotomayor and Kagan, JJ.) (noting *Heller*'s statement concerning presumptively lawful

prohibitions on firearm possession by felons, etc., and stating, "Like Justice Kavanaugh, I understand the Court's opinion today to cast no doubt on that aspect of *Heller*'s holding.").[3]

¶ 45    Federal district courts of appeal disagree whether the foregoing pronouncements are "*dicta*." Compare *Atkinson v. Garland*, 70 F.4th 1018, 1022 (7th Cir. 2023) (*dicta*), with *United States v. Vongxay*, 594 F.3d 1111, 1115 (9th Cir. 2010) (not *dicta*; noting that "[c]ourts often limit the scope of their holdings, and such limitations are integral to those holdings").

¶ 46    Case law under section 922(g)(1) of the federal Gun Control Act of 1968 (18 U.S.C. § 922(g)(1) (prohibiting possession of a firearm by someone "who has been convicted in any court of, [*sic*] a crime punishable by imprisonment for a term exceeding one year")), the federal felon-in-possession statute, is instructive. After *Bruen*, the federal courts of appeal are split as to whether the federal statute violates the second amendment, with the majority of circuits deciding the issue rejecting such challenges. Compare *Vincent v. Garland*, 80 F.4th 1197, 1201-02 (10th Cir. 2023) (the defendant was convicted of a nonviolent felony—bank fraud; holding that *Bruen* did not overrule circuit precedent that had upheld the constitutionality of section 922(g)(1); noting that six justices had reaffirmed *Heller*'s language that it was not "cast[ing] doubt on longstanding prohibitions on the possession of firearms by felons" (internal quotation marks omitted); finally noting that, under its precedent, circuit court had "no basis to draw constitutional distinctions based on the type of felony involved"), and *United States v. Jackson*, 69 F.4th 495, 501-06 (8th Cir. 2023) (rejecting as-applied challenge to federal statute; the defendant had two prior convictions for sale of a controlled substance and argued his offenses were nonviolent and did not show he was more dangerous than the typical law-abiding citizen; relying on Court's assurances concerning longstanding prohibitions on firearms possession by felons and the history supporting them and

---

[3]After *Bruen*, Justice Jackson replaced Justice Breyer.

concluding that "legislatures traditionally employed status-based restrictions to disqualify categories of persons from possessing firearms. Whether those actions are best characterized as restrictions on persons who deviated from legal norms or persons who presented an unacceptable risk of dangerousness, Congress acted within the historical tradition when it enacted [the federal statute] and the prohibition on possession of firearms by felons."), with *Range v. Attorney General*, 69 F.4th 96, 101-06 (3d Cir. 2023) (*en banc*) (sustaining as-applied second amendment challenge to federal statute; the defendant was convicted of making a false statement to obtain food stamp assistance, a misdemeanor punishable by up to five years' imprisonment; holding as to *Bruen*'s step one that the defendant was one of the people protected by the second amendment; holding as to step two that federal statute was enacted in the 20th century and no historical analogues existed to lifetime disarmament). Further, in a case addressing a facial challenge to section 922(g)(8) of the Gun Control Act of 1968 (18 U.S.C. § 922(g)(8))—which makes it unlawful to possess a firearm if under a civil court order related to domestic violence—the Fifth Circuit distinguished the defendant before it from convicted felons. *United States v. Rahimi*, 61 F.4th 443, 451-61 (5th Cir. 2023) (held that statute is unconstitutional because it does not "fit[ ] within our Nation's historical tradition of firearm regulation," but also noting the defendant "was not a convicted felon or otherwise subject to another 'longstanding prohibition[ ] on the possession of firearms' that would have excluded him" from the second amendment's scope (quoting *Heller*, 554 U.S. at 626)). Thus, it appears that the Fifth, Eighth, and Tenth Circuits take the position that convicted felons are not protected by the second amendment.

¶ 47    Finally, in Illinois, the First District has rejected a second amendment challenge to the Act. See *People v. Gunn*, 2023 IL App (1st) 221032, ¶ 19 (rejecting facial challenge to Act, where the defendant had a revoked FOID card and challenged the Act based on requirements that he provide

evidence of personal information and pay a fee; holding that *Bruen* did not apply because it explicitly acknowledged that background checks—"the cornerstone of the FOID Card Act"—are permissible, and, thus, the court did not need to engage in a historical analysis of firearm regulation).[4]

¶ 48                                    2. Application of *Bruen*

¶ 49    Here, plaintiff argues that application of the *Bruen* test should result in reversal of the circuit court's decision, because he has no violent misdemeanor or felony convictions and because the nation's history and traditions do not support the proposition that nonviolent felons lose their second amendment rights. See *Kanter v. Barr*, 919 F.3d 437, 458 (7th Cir. 2019) (Barrett, J., dissenting) ("founding-era legislatures categorically disarmed groups whom they judged to be a threat to the public safety. But neither the convention proposals nor historical practice supports a legislative power to categorically disarm felons because of their status as felons."), *abrogated by*

---

[4]The First District has also rejected second amendment challenges to several criminal statutes. See *People v. Baker*, 2023 IL App (1st) 220328, ¶ 37 (rejecting as-applied challenge to unlawful-use-of-a-weapon-by-a-felon statute; holding that *Bruen* test applies only to law-abiding citizens, not felons like the defendant); *People v. Brooks*, 2023 IL App (1st) 200435, ¶¶ 84-100 (rejecting as-applied challenge to armed-habitual-criminal statute, where the defendant had been convicted of two prior nonviolent felonies—manufacture or delivery of "other amount of narcotics Schedule I and II" and unlawful possession of a weapon by a felon; holding that *Bruen*'s step one was met because possession of a firearm is protected by the second amendment; further holding that, under step two, the statute is consistent with the nation's historical tradition of firearm regulation).

*Bruen*, 597 U.S. at ___, 142 S. Ct. at 2127. Conspiracy to commit cannabis trafficking, plaintiff argues, is not a violent or dangerous felony in this state. It does not, he contends, raise a suspicion that the convict is a threat to public safety. In contrast, plaintiff points to forcible felonies, which include

> "treason, first degree murder, second degree murder, predatory criminal sexual assault of a child, aggravated criminal sexual assault, criminal sexual assault, robbery, burglary, residential burglary, aggravated arson, arson, aggravated kidnaping, kidnaping, aggravated battery resulting in great bodily harm or permanent disability or disfigurement and any other felony which involves the use or threat of physical force or violence against any individual." 720 ILCS 5/2-8 (West 2022).

Plaintiff maintains that, because he has not been convicted of any forcible felony or violent misdemeanor, the "perpetual" denial of a FOID card is unconstitutional as applied to him.

¶ 50    Plaintiff also argues that his conviction of a nonviolent drug crime would not have rendered him a felon at the time of the second amendment's ratification. He maintains that, at common law, felonies consisted of violent crimes. Therefore, plaintiff reasons, disqualifying nonviolent criminals, like himself, from the protection of the second amendment does not make sense from a historical perspective. He also contends that the circuit court failed to apply the *Bruen* test and instead relied on the underlying facts of plaintiff's 2012 conviction and his Oklahoma civil asset forfeiture case. The court, according to plaintiff, never assessed his proclivity for violence or whether he would be a heightened danger to the public if allowed to lawfully own a firearm in the home for self-defense. Thus, in plaintiff's view, because the court rendered a decision based on its own sensibilities, failed to employ the *Bruen* test, and failed to make any factual findings as to

whether plaintiff had a proclivity for violence or heightened risk of dangerousness to the public, its decision must be reversed.

¶ 51    We reject plaintiff's argument. First, we assume, without deciding, that step one of *Bruen* is met. Next, as we explain below, we conclude that, even if the second amendment covered the conduct regulated by the Act, the statutory provisions at issue, as applied to plaintiff, are consistent with this country's historical tradition of firearm regulation and that thus plaintiff's challenge fails.

¶ 52    We find persuasive the federal courts of appeal cases that conclude the federal felon-in-possession statute does not violate the second amendment. They rely on the proposition that colonial societies excluded felons from possessing firearms and, in some cases, also reason that, because the government could historically disarm dangerous persons, it could also disarm all persons with felony convictions. See *Jackson*, 69 F.4th at 501-06; *Rahimi*, 61 F.4th at 452 (noting that the defendant "was not a convicted felon or otherwise subject to another 'longstanding prohibition[ ] on the possession of firearms' that would have excluded him" from second amendment's scope (quoting *Heller*, 554 U.S. at 626)). But see *Range*, 69 F.4th at 103-06 (holding that there is no historical tradition of firearm regulation supporting depriving the defendant, who made a false statement on food stamp assistance application, of his second amendment rights; federal law was passed in 1961 and, thus, is not longstanding; older historical analogues to lifetime disarmament do not exist).

¶ 53    We also disagree with defendant that his conviction was of a nonviolent felony. His conviction was of conspiracy to commit cannabis trafficking. Drug trafficking is inherently dangerous. See *People v. Tate*, 367 Ill. App. 3d 109, 116 (2006) (referring to "the danger known to accompany drug trafficking"); see also *United States v. Alaniz*, 69 F.4th 1124, 1130 (9th Cir.

2023) ("Like burglary or robbery, drug trafficking plainly poses substantial risks of confrontation that can lead to immediate violence.").

¶ 54    Moreover, here, the circuit court considered the public safety and public interest requirements under section 10(c) of the Act, which we address below, and determined that plaintiff failed to establish these requirements. Thus, we cannot conclude that plaintiff's criminal history should except him from the group—persons with felony convictions—traditionally prohibited from possessing firearms.

¶ 55    We also find unavailing plaintiff's argument that the Act impermissibly allows for interest balancing by judges. He contends that *Bruen* expressly rejected this approach. The portion of *Bruen* upon which he relies rejected means-end scrutiny as the basis for assessing second amendment challenges. *Bruen*, 597 U.S. at ___, 142 S. Ct. at 2129-30. However, the threat of danger posed by plaintiff is relevant in assessing whether the Act is consistent with this country's historical tradition of firearm regulation. See *Jackson*, 69 F.4th at 504-06; *Kanter*, 919 F.3d at 458.

¶ 56    Finally, we note that plaintiff is incorrect in claiming that the denial of relief under the Act subjects him to a "perpetual" denial of a FOID card. Plaintiff may again petition for relief. See *Evans v. Cook County State's Attorney*, 2021 IL 125513, ¶ 49 ("[W]e see nothing in the statute that would preclude [the] petitioner from filing another petition to remove his firearm disability. *** [H]is criminal history is now an additional three years in the past. Moreover, [the] petitioner now knows why his previous submissions were found lacking ***.").

¶ 57    In summary, we reject plaintiff's as-applied challenge to the Act.

¶ 58                        B. Sections 10(c)(2) & (3) of the Act

¶ 59    Next, plaintiff argues in the alternative that the circuit court erred in denying him relief under the Act, where he met his burdens under sections 10(c)(2) and 10(c)(3). For the following reasons, we disagree.

¶ 60    We review for an abuse of discretion whether a petitioner has met the requirements of section 10(c) of the Act. *Evans v. Cook County State's Attorney*, 2021 IL 125513, ¶ 41. An abuse of discretion occurs where no reasonable person would adopt the circuit court's position. *Id.*

¶ 61    Generally, the Act provides that "[n]o person may acquire or possess any firearm, stun gun, or taser within this State without having in his or her possession a [FOID] Card." 430 ILCS 65/2(a)(1) (West 2022). Here, the ISP denied plaintiff's application for reinstatement of his FOID card pursuant to section 8(c) of the Act. Section 8(c) provides that the ISP may deny a FOID card application if it finds that the applicant is "[a] person convicted of a felony under the laws of this or any other jurisdiction." *Id.* § 8(c). The ISP noted plaintiff's conviction of conspiracy to commit cannabis trafficking, a Class 1 felony.

¶ 62    A person whose application for a FOID card is denied based on a conviction of certain offenses, including a violation of the Cannabis Control Act (720 ILCS 550/1 *et seq.* (West 2022)) that is classified as a Class 2 or greater felony, may petition the circuit court under section 10 of the Act for a hearing seeking relief from the denial. 430 ILCS 65/10(a) (West 2022). "At the hearing, the court shall determine whether substantial justice has been done." *Id.* § 10(b). The petitioner bears the burden of satisfying section 10(c)'s requirements. *Brown v. Illinois State Police*, 2021 IL 126153, ¶ 49.[5]

---

[5]The ISP's denial is not a final administrative decision subject to the Administrative Review Law (735 ILCS 5/3-101 to 3-113 (West 2022)). *Fuller v. Department of State Police*, 2019

¶ 63    Section 10(c) of the Act permits the circuit court to grant relief if the applicant establishes that (1) he or she has not been convicted of a forcible felony within 20 years of the application for a FOID card; (2) "the circumstances regarding a criminal conviction, where applicable, the applicant's criminal history and his [or her] reputation are such that the applicant will not be likely to act in a manner dangerous to public safety"; (3) "granting relief would not be contrary to the public interest"; and (4) "granting relief would not be contrary to federal law." 430 ILCS 65/10(c) (West 2022). Here, the circuit court denied plaintiff relief because it determined that plaintiff failed to establish the requirements of subsections (c)(2) (public safety) and (c)(3) (public interest).

¶ 64    As to the public safety requirement, the circuit court determined that plaintiff's 2012 conviction of conspiracy to commit cannabis trafficking was for a very serious felony and was based on original charges for multiple Class X felonies that plaintiff admitted he committed. Further, the court noted that plaintiff was an adult—in his mid-thirties—when he committed the crimes, his conviction was only 10 years old, and he had been off probation only since 2016 (and the hearing in this case occurred in 2022). Finally, the court noted that plaintiff's 2006 Oklahoma arrest suggested that his criminal history was not limited to 2010.

¶ 65    As to the public interest requirement, the circuit court determined that granting relief would be contrary to the public interest for the same reasons that the public safety requirement was not met—specifically, that the conduct was very similar to the offense for which he was arrested in Oklahoma and relatively recent and plaintiff possessed firearms. Furthermore, the court added that there was no reputation testimony offered, and it discounted Stephanie's and Kacprzak's testimony, in part because they were unaware of the extent of plaintiff's criminal history.

---

IL App (1st) 173148, ¶¶ 17-18.

¶ 66    Plaintiff argues that both the public safety and the public interest requirements were satisfied. He contends that he has turned his life around, has only one conviction for which he successfully completed and was discharged from probation in 2016, has not been arrested since 2010, has not been convicted of a crime since 2012, and has not had contact with the criminal justice system since being discharged from probation in 2016. He also notes that he is married, is active in raising his children, and owns his own business. Plaintiff further notes that he previously had a FOID card and demonstrated that he was not a danger to public safety and did not act contrary to the public interest when he possessed the card and lawfully owned firearms. Finally, plaintiff notes that he does not have any convictions of a violent or dangerous offense.

¶ 67    Plaintiff relies on the appellate court's decision in *Evans v. Cook County State's Attorney*, 2019 IL App (1st) 182488, *aff'd*, 2021 IL 125513. In *Evans*, the petitioner had been convicted in 1994, at age 22, of manufacture or delivery of a controlled substance (a Class 2 felony) and manufacture or delivery of more than 15 grams of cocaine (a Class X felony). He was sentenced to three years' imprisonment. He had been arrested (without being convicted) multiple times before the events leading to these convictions and several times afterwards, with the final arrest in 2008. In 2018, he applied for a FOID card, and the ISP denied his application based on his two felony drug offenses and the related federal statute prohibiting possession of firearms by a felon. The petitioner then petitioned the circuit court for review. He attached several letters to his petition, including one where he acknowledged his criminal convictions and explained that he used to hang out with the wrong crowd. He also noted that he owned his own business since 2005 and he submitted letters from his wife and three other character witnesses who acknowledged that he had turned his life around. The circuit court agreed with the State that issuing the petitioner a FOID card would violate federal law and be contrary to the public interest. *Id.* ¶¶ 8-18.

¶ 68    The appellate court held that federal law barred the petitioner from obtaining a FOID card but that, as relevant here, the circuit court erred in finding that issuing him a FOID card would be contrary to the public interest (*i.e.*, section 10(c)(3) of the Act). *Id.* ¶¶ 26-28. Reviewing the issue *de novo*, the court determined that the petitioner's convictions did not suggest "the involvement of violence." *Id.* ¶ 27. He had made progress since 2008, including having a stable family life, raising three children, and running a viable business. *Id.* The court also noted the petitioner's admission to his crimes on his FOID card application and acknowledgement in his letter of his "errant past." *Id.* ¶ 28. The court did not address section 10(c)(2) of the Act (public safety) because the parties did not dispute that the petitioner had satisfied the requirement. *Id.* ¶ 22.

¶ 69    The petitioner appealed to the supreme court, but, before issuing its decision, the court remanded the case to the circuit court for the lower court to set forth its reasoning. *Evans*, 2021 IL 125513, ¶ 19. The circuit court entered a written order explaining why it determined the petitioner had not met his burden. *Id.* ¶ 20. As to the public interest requirement, the court noted that it found the character references lacking because they did not address the responsibilities of firearm ownership, they were devoid of facts specific to that issue, the petitioner's wife did not even mention gun ownership, and the other witnesses did not provide sufficiently specific information about their interactions with the petitioner. *Id.* The court also took issue with the petitioner's submissions concerning his convictions, the responsibilities of firearm ownership, and his failure to explain whether he had been addicted to drugs and whether he had received drug treatment. *Id.* ¶ 22. Finally, the circuit court noted that the petitioner had never requested an evidentiary hearing. *Id.* ¶ 23.

¶ 70    The supreme court clarified that the abuse-of-discretion standard applied (*id.* ¶ 41) and held that the circuit court had not abused its discretion in determining that the petitioner did not provide

sufficient information as to the public interest requirement. *Id.* ¶¶ 43-44. Specifically, he failed to provide the circuit court with details of the offenses, the extent of any history he had with drugs, and whether he had received treatment. *Id.* ¶ 44. Further, the supreme court noted that the petitioner did not provide details concerning how he would be able to carry out the responsibilities of firearm ownership. *Id.* The court also desired more information from the people who provided brief character references for the petitioner. *Id.* The court noted that the petitioner's counsel did not request an evidentiary hearing, the petitioner was not present in court when the circuit court considered his petition, and the petitioner did not present the supreme court with either a transcript or a bystander's report of the hearing on his petition (which had prompted the supreme court to remand the case to the circuit court for that court to set forth its reasons for denying the petition). *Id.* ¶¶ 44, 48.

¶ 71 Here, plaintiff, as noted, relies on the appellate court's decision in *Evans* to argue that, unlike the petitioner in *Evans*, he does not have a Class X conviction, has never been sentenced to prison, and has only one conviction. Plaintiff also notes that he has not been arrested since 2010, has not received a criminal conviction since 2012, and has not had contact with the criminal justice system since being discharged from probation in 2016. He is also married, is active in raising his children, and owns his own business. He also contends that, unlike the *Evans* petitioner, he has previously been issued a FOID card and lawfully owned firearms prior to his 2010 arrest. Thus, he maintains, this court does not have to guess how he would handle the significant responsibility of firearm ownership. Finally, he notes that he does not have any convictions of a violent or dangerous felony that would cause this court concern.

¶ 72 To the extent that *Evans* is instructive, given its relatively incomplete record, we disagree with plaintiff that the circumstances here are sufficiently different from those in *Evans* to warrant

a different result. Petitioner relies on the appellate court's decision, wherein the court erroneously applied the *de novo* standard of review to conclude that the public interest requirement was met. The supreme court, with a somewhat more complete record before it, held that, under the abuse-of-discretion standard, the public interest requirement was not met. See *id.* ¶¶ 43-44, 48. Although the *Evans* petitioner had convictions of more serious offenses than plaintiff, he engaged in his criminal acts at a relatively young age. Plaintiff, as the circuit court here noted, was in his thirties when he was charged in Du Page County with multiple Class X felonies, including possessing a firearm without a FOID card, and he ultimately pleaded guilty to a Class 1 felony. He was discharged from probation only six years before the hearing that led to this appeal. Also, four years before the Du Page County offenses, Oklahoma police found plaintiff in possession of a large amount of cash, to which a K-9 had alerted, and plaintiff was charged with acquiring drug proceeds. Further, like the *Evans* petitioner, plaintiff's character references did not know of the extent of plaintiff's criminal activities.

¶ 73     *Evans* aside, we conclude that the circuit court did not abuse its discretion in determining that plaintiff failed to show that he was not likely to endanger the public safety or that issuing him a FOID card would not be contrary to the public interest. Plaintiff's arrest and conviction history reflected recent participation in inherently dangerous illegal activities and a failure to exhibit responsibility concerning the Act's requirements. Furthermore, there was no evidence concerning plaintiff's reputation in the community. Accordingly, it was not unreasonable for the circuit court to uphold the ISP's denial of plaintiff's FOID card application.

¶ 74     In 2006, at around age 32, plaintiff was arrested in Oklahoma. Police found, according to plaintiff, about $20,000 in the vehicle, and the money was seized. Plaintiff claimed that the incident was recorded as a drug offense ("Acquire Proceeds from Drug Activity") because the money had

drug residue on it, as, he further claimed, does most circulating money in large cities. Plaintiff never submitted the documentation the ISP requested about the incident. The circuit court reasonably found that plaintiff's recitation of the Oklahoma incident was incredible because it lacked critical information, including why plaintiff was stopped, why a K-9 unit was called to the scene, why or how plaintiff was going to purchase real estate on his father's behalf, and why he agreed to a $5000 forfeiture if, as he claimed, surveillance video showed that he and his father withdrew $20,000 from his father's bank.

¶ 75    One year later, plaintiff was arrested by Elmwood Park police for aggravated assault. Plaintiff explained that someone contacted the police because they knew plaintiff had guns in the house and they had safety concerns during an argument between plaintiff and Stephanie.

¶ 76    In 2010, at age 36, plaintiff was again arrested for drug-related offenses. He explained that, due to alleged financial difficulties, he traveled to California on four occasions, transporting up to 200 pounds of cannabis and money on each trip. Plaintiff was charged with two cannabis trafficking crimes and with possession of a firearm without a valid FOID card. He pleaded guilty to conspiracy to commit cannabis trafficking, agreed to cooperate with federal officials, was sentenced to probation, and was discharged from it in January 2016. As the circuit court noted, plaintiff illegally possessed a firearm at the time of the cannabis trafficking, and this did not reflect responsible firearm ownership. Only 5½ years after he was discharged from probation, plaintiff applied to renew his FOID card, the application at issue in this appeal.

¶ 77    The circuit court reasonably determined that Stephanie's and Kacprzak's testimony did not support plaintiff's case, as Stephanie claimed she lacked detailed knowledge of plaintiff's activities and had safety concerns, which undercut her testimony concerning plaintiff's character, and Kacprzak claimed he was unaware of the details of plaintiff's criminal conduct and did not have

consistent contact with him. Finally, as the circuit court noted, there was no evidence presented concerning plaintiff's reputation in the community.

¶ 78    In summary, the circuit court did not abuse its discretion in denying plaintiff relief under section 10(c) of the Act.

¶ 79                                    III. CONCLUSION

¶ 80    For the reasons stated, we affirm the judgment of the circuit court of Lake County.

¶ 81    Affirmed.

*Awkerman v. Illinois State Police*, **2023 IL App (2d) 220434**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Lake County, No. 22-MR-122; the Hon. Daniel L. Jasica, Judge, presiding. |
| **Attorneys for Appellant:** | Gran M. McKerlie, of Northbrook, for appellant. |
| **Attorneys for Appellee:** | Kwame Raoul, Attorney General, of Chicago (Jane Elinor Notz, Solicitor General, and Christina T. Hansen and Anna W. Gottlieb, Assistant Attorney Generals, of counsel), for appellee Illinois State Police. |
| | Eric F. Rinehart, State's Attorney, of Waukegan (Daniel E. Brown and Paula V. Randall, Assistant State's Attorneys, of counsel), for other appellee. |