2024 IL App (1st) 23-1393-U

No. 1-23-1393

Order filed December 20, 2024

Fifth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| ALBERT PICKETT, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 22 CH 00020 |
| | ) | |
| ILLINOIS STATE POLICE and the COOK COUNTY | ) | Honorable |
| STATE'S ATTORNEY, | ) | Eve Reilly, |
| | ) | Judge, Presiding. |
| Defendants-Appellees. | ) | |

_____

JUSTICE ODEN JOHNSON delivered the judgment of the court.
Presiding Justice Mikva and Justice Navarro concurred in the judgment.

## ORDER

¶ 1    *Held*:  Circuit court's denial of plaintiff's request for a FOID card was not an abuse of discretion where plaintiff failed to meet his burden under sections 10(c)(2) and (3) of the Firearm Owner Identification (FOID) card Act (430 ILCS 65/10(c)(2), (3) (West 2022).

¶ 2    Plaintiff Albert Pickett appeals the denial of his petition for issuance of a Firearm Owner Identification (FOID) card by the Illinois State Police (ISP) after an objection filed by the Cook County State's Attorney (State's Attorney). After an evidentiary hearing, the circuit court denied

Pickett's requested relief for issuance of a FOID card. On appeal, Pickett contends that the circuit court abused its discretion in finding that he had not met his burden under sections 10(c)(2) and (3) of the FOID Card Act (Act) (430 ILCS 65/10(c)(2), (3) (West 2022)) and denying his requested relief. For the following reasons, we affirm.

¶ 3                                          BACKGROUND

¶ 4      The facts of this case are not in dispute. On April 13, 2017, Pickett applied for a FOID card from the ISP. Pickett's background contained a 1986 class two burglary conviction and his application was denied by a letter explaining that his background prohibited him from possessing firearms. Specifically, Pickett was prohibited from possessing firearms by section 8(c) of the Act, which applies to individuals convicted of a felony. 430 ILCS 65/8(c) (West 2022)).

¶ 5      Two weeks after being informed of the ISP's decision, Pickett filed an administrative appeal of the ISP's decision. Pickett contended that he had not been convicted of a forcible felony within the last 31 years; at least 20 years had passed since the end of his prison sentence for his burglary conviction; and in light of his criminal history and reputation, he would not be likely to act in a manner dangerous to the public. Attached to his appeal was a letter from the Illinois Secretary of State approving his application for HazMat endorsement; his resume; a certificate of baptism; a certificate of service commemorating his completion of jury duty service; his commercial driver's license certificate; a Department of Financial and Professional Regulation Permanent Employee Registration Card (PERC); a 2014 property tax bill; and a letter from the Transportation Security Administration (TSA) approving his application for a Hazardous Materials Endorsement. The ISP denied his appeal in July 2017, explaining again that it could not grant his application for a FOID card based on his burglary conviction.

¶ 6    In July 2018, Pickett filed another appeal with the ISP and attached what purported to be a document showing that his burglary conviction had been expunged. The ISP again denied Pickett's appeal in a letter dated September 7, 2021, explaining that although his burglary conviction had been sealed, it had not been expunged from his criminal history.

¶ 7    On January 3, 2022, Pickett filed a *pro se* petition in the circuit court of Cook County against ISP, seeing relief from the denial of his FOID card application. On June 7, 2022, Pickett amended his complaint to include the State's Attorney.

¶ 8    On June 8, 2022, ISP filed their official business record under seal in accordance with 20 ILCS 2640/7 (West 2022) and the Code of Federal Regulations (28 C.F.R. § 23.20(f)(1) (2017)). Pickett's criminal history records revealed that he had been arrested and charged nine times with the following crimes: aggravated battery in June 1984; battery and possession of a controlled substance in 1988; attempted theft on February 17, 1989; possession of a controlled substance on February 22, 1989; battery in 1990; a violation of the FOID Act in 1993; aggravated assault in 1997; causing damage to a highway structure in 2000; and retail theft in 2004. ISP filed an objection to Pickett's petition on September 1, 2022. ISP argued that while Pickett received a pardon for his burglary conviction, the pardon did not remove his prohibition against shipping, transporting, possessing or receiving firearms. Additionally, the ISP contended that Pickett was a 20-year-old adult when he committed the burglary, thus it was not committed by a youth who did not know better. The ISP concluded that Pickett did not meet his burden under the Act because Pickett's extensive criminal history included multiple arrests spanning several years indicated that he was likely to act in a manner contrary to public safety. The ISP also noted that Pickett also submitted records indicating that he was arrested for domestic battery in 2004, which had not

appeared in the criminal history search at the time of Pickett's initial FOID application, which suggested that there may be other arrests that were currently unknown.

¶ 9     On September 8, 2022, Pickett filed a *pro se* response to ISP's objections arguing that his conviction was pardoned and expunged and that he should be given a FOID card because he had no other convictions. Pickett later retained counsel who subsequently amended the response to ISP's objection on January 18, 2023. The amended response argued that Pickett would not be a threat to public safety because he presented evidence that he had maintained consistent stable employment, was engaged with his church and community, completed job trainings and earned professional licenses. He further noted that despite his arrest record, none of the arrests resulted in convictions and that a majority of those arrests were expunged from his record.

¶ 10     On February 16, 2023, the State's Attorney filed an objection to Pickett's petition for relief and attached additional evidence of Pickett's status as a respondent in an *ex parte* no stalking/no contact order obtained by Dominique Lucas on January 17, 2020. In her petition, Lucas claimed that Pickett was "monitoring, observing, following, [and] harassing" her and that he came to her apartment uninvited on two or more occasions. The order was terminated in April 2021 based on a "side agreement" between Lucas and Pickett. The State's Attorney argued that it would be contrary to the public interest and would pose a threat to public safety to give Pickett a FOID card given that he was recently the subject of such an order.

¶ 11     Pickett's counsel filed a response to the State's Attorney's objection on March 20, 2023, arguing that the emergency no contact/no stalking order was entered *ex parte* and without him providing his version of events. Pickett added that he filed his own petition for no contact against

Lucas and that both orders were dismissed by agreement, and he further denied Lucas' allegations that led to the entry of the order.

¶ 12    The circuit court held an evidentiary hearing on Pickett's petition on July 6, 2023. Pickett presented two witnesses at the hearing, Teresa Lovelady and Annette Arrington-Cain who both testified about Pickett's character and reputation.

¶ 13    Arrington-Cain, a caretaker and District 5 Beat Facilitator with the Chicago Police Department testified that she had known Pickett for 40 years, spoke with him at least once per week, and described him as a "very caring, loving, generous, hardworking, and law-abiding citizen." Arrington-Cain stated that she was aware of Pickett's prior felony burglary conviction and other arrests, as well as an order of protection involving a tenant in the building he owned.

¶ 14    Lovelady, Pickett's niece, testified that she grew up close with him because they were only 10 years apart in age. Lovelady described Pickett as the person in the family who took care of everyone and that she would be comfortable with him owning and operating a firearm. Lovelady also stated that she was aware of Pickett's felony burglary conviction and an incident with a tenant in 2020.

¶ 15    Pickett testified on his own behalf regarding his employment history, criminal history, personal history, his reasons for seeking a FOID card and the no stalking/no contact order, as well as other aspects of his life. Pickett stated that he wanted a FOID card to have a gun in his home for protection. Pickett testified that he worked as a truck driver for the City of Chicago's Water Department for 10 years. He has a commercial driver's license (CDL), his PERC, 20 hours of security training, TSA security clearance to work at the airport, and a certification to transport hazardous materials.

¶ 16    With respect to his 1986 felony burglary conviction, Pickett testified that he went to the fruit market near his home after learning that his nephew had broken in. After he arrived, the police arrived and he was arrested. Pickett pled guilty to burglary the day after his arrest. He also testified that he filed a *pro se* request for clemency with the Illinois Governor's office, which was granted, and the pardon was entered into evidence. Pickett stated that he did not ask for restoration of firearm rights specifically because he was unaware that he needed to.

¶ 17    Pickett further testified that he had been arrested before and after his 1986 burglary conviction, but none of those resulted in convictions. Pickett acknowledged in court that he was named as a respondent in a no contact/no stalking order filed by Lucas, a tenant in his building. He stated that Lucas filed the order after he filed for her eviction, and he was not present in court when the emergency order was granted. He further stated that Lucas attacked him in the unit after she agreed to move out, and in response, he filed a no contact/no stalking order against her. Pickett stated that ultimately both he and Lucas agreed to drop their no contact/no stalking orders against each other.

¶ 18    On cross-examination, the State's Attorney entered the ISP's business records into evidence and questioned Pickett about his criminal history. He was asked about the circumstances surrounding a 1984 arrest for misdemeanor aggravated battery, and Pickett replied that he believed the arrest stemmed from an incident when his friend took his car for two weeks and when he returned, would not return the keys to Pickett. Pickett stated that they "rassled" to retrieve his keys from the friend's pocket. The State's Attorney also questioned Pickett about several other dismissed cases between 1988 and 2004. Pickett was unable to recall the circumstances of his arrests, except for a 1989 attempted theft arrest when he was accused of shoplifting from Wal-

Mart, and a 2000 arrest for criminal damage to a highway structure. For that case, Pickett stated that he believed it was when he was searched during a traffic stop and leaned onto the hood of a police car and it "gave in a little bit." Pickett also admitted that he had used the names "Kenneth Morgan" and "Thomas King" as aliases.

¶ 19 The State's Attorney also questioned Pickett about Lucas' no contact/no stalking order from 2020, and Pickett denied the allegations in the order. When Pickett was questioned about the extension of the order nine times, Pickett stated that the order was extended because the case was continued until after the eviction proceedings were resolved Pickett was also asked whether he spoke in court about the allegations of the order, Pickett stated that there were a lot of continuances, he represented himself and continued going to court, and he never had a chance to speak. On redirect examination, Pickett clarified that there were no allegations that he violated the no contact/no stalking order or that he had ever been in possession of a firearm or discharged a firearm.

¶ 20 After the hearing, the circuit court denied Pickett's petition. The court found that Pickett satisfied the first requirement in section 10(c) of the Act (430 ILCS 65/10(c) (West 2022)) because he was not convicted of a forcible felony within the last 20 years. But the court also found that Pickett did not meet his burden on the second and third requirements of the Act- that he would not be likely to act in a manner dangerous to public safety and that granting relief would not be contrary to the public interest. The court referenced Pickett's criminal history, including his arrests for aggravated battery, domestic battery, and a FOID card violation, and noted that Pickett testified that he could not remember any facts about the circumstances surrounding those and other arrests. The court found Pickett's testimony about his lack of recollection was not credible. However, the

circuit court indicated that it was inclined to believe Pickett's testimony about the no contact/no stalking order entered against him in 2020, but due to his overall credibility issues, the court concluded that Pickett had not met his burden.

¶ 21     Pickett filed his timely notice of appeal on August 4, 2023.

¶ 22                                ANALYSIS

¶ 23     On appeal, Pickett contends that the circuit court abused its discretion in denying his petition for a FOID card based on a lack of credibility because his testimony was uncontested and unimpeached. Pickett also asserts that the circuit court misstated his testimony at the hearing because he did recall details from some of his arrests, contrary to the court's statements. He argues that his unrebutted testimony was improperly rejected by the circuit court as factfinder and resulted in an arbitrary decision to deny his request for a FOID card, which was an abuse of discretion. Pickett requests that this court reverse the judgment of the circuit court.

¶ 24     We review for an abuse of discretion whether a petitioner has met the requirements of section 10(c) of the Act. *Brown v. Illinois State Police*, 2021 IL 126153, ¶ 49; *Awkerman v. Illinois State Police*, 2023 IL App (2d) 220434, ¶ 60. An abuse of discretion occurs where no reasonable person would adopt the circuit court's position. *Id.* In determining whether there has been an abuse of discretion, a reviewing court may not substitute its judgment or even determine whether the trial court exercised discretion wisely. *Jacobs v. Yellow Cab Affiliation, Inc.*, 2017 IL App (1st) 151107, ¶ 35. The abuse of discretion standard is the most deferential standard of review available except for no review at all. *Id.*

¶ 25     Generally, the Act provides that no person may acquire or possess any firearm, stun gun, or taser within this State without having in his or her possession a [FOID] Card. 430 ILCS

65/2(a)(1) (West 2022). A person whose application for a FOID card is denied may petition the circuit court under section 10 of the Act for a hearing seeking relief from the denial. *Awkerman*, 2023 IL App (2d) 220434, ¶ 62; 430 ILCS 65/10(a) (West 2022). At the hearing, the circuit court shall determine whether substantial justice has been done. 430 ILCS 65/10(b) (West 2022). The petitioner bears the burden of satisfying section 10(c)'s requirements. *Awkerman*, 2023 IL App (2d) 220434, ¶ 62.

¶ 26    Section 10(c) of the Act provides, in pertinent part:

"Any person prohibited from possessing a firearm under Section 24-1.1 or 24-3.1 of the Criminal Code of 2102 or acquiring a Firearm Owner's Identification Card under Section 8 of this Act may apply to the Firearm Owner's Identification Card Review Board or petition the circuit court in the county where the petitioner resides, whichever is applicable in accordance with subsection (a) of this Section, requesting relief from such prohibition and the Board or court may grant such relief if it is established by the applicant to the court's or the Board's satisfaction that:

* * *

(2) the circumstances regarding a criminal conviction, where applicable, the applicant's criminal history and his reputation are such that the applicant will not be likely to act in a manner dangerous to public safety;

(3) granting relief would not be contrary to the public interest; * * *." 430 ILCS 65/10(c)(2), (3) (West 2022).

¶ 27    Here, we cannot conclude that the circuit court's determination that Pickett failed to satisfy his burden under section 10(c) of the Act was an abuse of discretion. Pickett produced two

witnesses at the evidentiary hearing, a relative who lived out of town (Lovelady) and a long-time friend from the community who volunteered with the police department (Arrington-Cain), to vouch for his reputation and character.

¶ 28    His niece was aware of his 1986 burglary conviction and the issue concerning the former tenant in 2020. The record did not indicate whether she was aware of Pickett's other contacts with the law, namely his arrests for aggravated battery in June 1984; battery and possession of a controlled substance in 1988; attempted theft on February 17, 1989; possession of a controlled substance on February 22, 1989; battery in 1990; a violation of the FOID Act in 1993; aggravated assault in 1997; causing damage to a highway structure in 2000; retail theft in 2004, and domestic battery in 2004. Lovelady testified about Pickett's character as a family member and that she was comfortable with Pickett possessing a firearm. Arrington-Cain testified that she had known Pickett for 40 years and spoke with him at least weekly. She was aware of his burglary conviction and at least some of his other arrests, but not the issue with the former tenant. Arrington-Cain generally testified about Pickett's reputation as a law-abiding citizen and that she was comfortable with him owning and operating a firearm.

¶ 29    Pickett himself testified about the many positive things he has accomplished since his 1986 conviction, including long-term employment with the City of Chicago, as well as various other professional certifications he has received. He provided explanations for his burglary conviction in 1986 when he was 20 years old, the aggravated battery arrest in 1984 as an 18-year-old, attempted retail theft in 1989, and for what he believed led to the 2000 arrest for causing damage to a highway structure. Pickett however stated that he could not recall (or simply did not testify to) any of the circumstances surrounding his remaining arrests for battery and drug possession in 1988,

drug possession in 1989, battery in 1990, a violation of the FOID Act in 1993, aggravated assault in 1997, retail theft and domestic battery in 2004, but did not dispute that those arrests occurred. Pickett also provided an explanation for the no contact/no stalking order. Pickett also admitted that he had previously used aliases.

¶ 30    The specific language of the Act specifies that a petitioner must establish the section 10(c) factors to the court's or Board's satisfaction. *Evans v. Cook County State's Attorney*, 2021 IL 125513, ¶ 39; 430 ILCS 65/10(c) (West 2022). This specific language grants discretion to the circuit court to determine whether a petitioner has met his burden.

¶ 31    Here, we have reviewed Pickett's criminal history and the nature of that history, specifically that several of his arrests were for assault or battery including domestic battery in 2004, when he would have been almost 40 years old, as well as for theft that same year, and at least two drug-related arrests. Since, Pickett did not elaborate on that specific criminal history during the evidentiary hearing, we cannot say that the circuit court abused its discretion in finding that Pickett failed to satisfy his burden under section 10(c) the Act to establish to its satisfaction that he was not a threat to public safety or that not granting him a FOID card was against the public interest.

¶ 32    For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

¶ 33    Affirmed.